This is a suit in which the plaintiff is seeking to recover damages to his automobile as a result of a collision with the truck of the defendant. The plaintiff alleged that on or about September 21, 1947 at approximately 4:30 P.M. his automobile was being operated by his wife in a southerly direction on Highway 51 at the village of Tangipahoa, Louisiana, and that while so driving "she was suddenly run into by the defendant truck which was traveling in the same direction on said Highway 51 and ran into the rear of your petitioner's automobile." The petitioner further pleaded the doctrine of res ipsa loquitur and, in the alternative, that the defendant was negligent in that the truck was being operated at a speed in excess of 50 miles per hour and, therefore, the driver did not have it under control and that the operator of the truck was unable to stop it, "either due to defective brakes or in failing to see and heed what he should have seen and heeded." The petitioner alleged that he had sustained damages in the amount of $437.59 "as per itemized statement hereto annexed as part hereof."
The defendant filed a general denial and further answered that the true facts were that the defendant's truck was being operated by its employee, K. C. Trammel, and was proceeding south on Highway 51 to the rear of plaintiff's car, at or near the village of Tangipahoa on the day in question, and that at the same time a Ford car was being driven north on said highway and that the driver of plaintiff's car attempted to make a left turn in front of the on-coming Ford car and in front of defendant's truck, whereupon the defendant's truck driver stopped the truck entirely, and plaintiff's car was struck by the northbound car and pushed into the defendant's truck while same was completely stopped, and, therefore, any damage which may have been caused by the collision was caused entirely and solely by the fault of the driver of the plaintiff's car in attempting to make a left turn in front of the approaching northbound car.
The case was duly tried and the judge of the District Court rendered judgment as prayed for in favor of the plaintiff, from which judgment the defendant has appealed.
The main dispute in this case is one of fact, that is, whether the defendant's truck ran into the rear of the plaintiff's automobile or whether, as set up by the defendant in its answer, the plaintiff's automobile was struck by a northbound car and knocked back into the truck of the *Page 153 
defendant. It is undisputed that the plaintiff's car and the truck were traveling south on the highway just prior to the accident, and that a third car was traveling north on Highway 51 and was being operated by the wife of J. C. Warren, a colored man, and that Mrs. Raborn, on reaching the intersection of the main street of Tangipahoa and the highway and intending to make a left-hand turn at this point in order to cross the railroad tracks which are parallel and adjacent to the highway, gave the proper hand signal for such a turn, which was seen by the driver of the defendant's truck and which he contends he honored by bringing his truck to a stop. Mrs. Raborn testified that she had slowed down and almost come to a stop as she was waiting for the northbound Warren car to pass, when the truck struck her in the rear and knocked her across the center line and into the northbound traffic lane and caused her to strike the left front, left side, and left rear fender of the northbound car as well as to damage her left front fender, left side and left rear fender of her own car.
Counsel for defendant strenuously objected to any testimony to prove that plaintiff's car had been knocked into another car for the reason that the petition of plaintiff only alleged that the defendant's truck ran into the back of the plaintiff's car and nowhere in the plaintiff's petition was it alleged that there was any third car involved. Defendant's objection also covered any claim for damages that might have been caused to plaintiff's car when it ran into the northbound Warren car.
The Court ruled that the objection should go to the effect of the testimony and that, inasmuch as the defendant itself plead and alleged there was another car involved in the accident, it would hear the testimony subject to the objection.
The ruling of the Court was correct as plaintiff in his petition set up the amount of damages "as per itemized statement hereto annexed as part hereof," and prayed for judgment for such damages in the sum of $437.59, having alleged that such damages were the result of the negligence of the operator of the truck in striking plaintiff's car in the rear. Plaintiff was entitled to make such proof. Proof of such damage was given by the mechanic, Inkembrandt, who finally obtained the repair job and made the estimate properly introduced.
Plaintiff has offered the testimony of eight witnesses, seven of whom were eyewitnesses and the eighth was a mechanic who made the estimate of the damages and partial repairs to plaintiff's automobile. All of these witnesses testified that the defendant's truck struck the plaintiff's automobile in the rear, knocking it into the other lane of traffic where it collided with a northbound automobile which was passing at that time.
The defendant offered the testimony of the driver of its truck and of Walter Gill, a Deputy Sheriff. He testified to a conversation he had with Mrs. Thad Raborn, wife of plaintiff and operator of the automobile on the day of the accident, sometime after the accident, several days or several weeks. Mr. Gill's testimony was vague but we gather that it was his understanding from talking to Mrs. Raborn that only the Warren car was involved in the collision, in other words, that Mrs. Raborn had not mentioned to Mr. Gill that the truck of the defendant had struck her automobile in the rear.
The plaintiff's automobile was being operated by Mrs. Raborn and, sitting next to her on the front seat, was Mrs. Louise Kennedy Jones, and on the right-hand side on the front seat was another guest, sister of Mrs. Raborn, Mrs. Lula Tortorice. We can see nothing wrong with the testimony of these ladies. They are most positive in their testimony that the truck struck the rear of the automobile first and knocked it into the on-coming northbound Warren car.
We also have the testimony of J. C. Warren, the owner of the northbound car, and Mary Lee Warren, his wife, who was driving at the time of the accident, and their testimony is direct and we see no reason to disbelieve it. It is the same as the testimony of the three ladies and other disinterested eyewitness, Eugene Tate, who *Page 154 
testified that the plaintiff's automobile was first struck by the defendant's truck, causing it to be knocked into the Warren car.
Counsel for defendant strenuously argued that the plaintiff's witnesses could not be correct in their version of the accident as they testified that plaintiff's automobile was struck by the truck a straight blow in the rear, and that the automobile was headed straight south on the highway, and, therefore, the automobile would have proceeded straight down the highway rather than across the highway. While we have searched the record in vain to find any testimony as to where plaintiff's automobile finally came to a stop after the collision, either as a result of being knocked across the highway or as a result of being knocked back into the truck, it is our belief that at the time of the blow to the rear of the automobile by the truck plaintiff's wife had turned her front wheels slightly to the left. This is borne out by the testimony of the driver of defendant's truck as he stated that Mrs. Raborn had cut her wheels in order to make the left-hand turn. Certainly, this would have been the natural thing for Mrs. Raborn to have done in anticipation of making the left turn, and when struck in the rear, it caused her car to cross to the left side of the highway. We agree with counsel for defendant's statement in brief and argument that had this truck, which had a combined weight of 28,400 pounds, been going 35 or 40 miles an hour when it struck the automobile, it would have caused much more damage and, more than likely, would have been fatal to the occupants of the car, however, we don't believe that the truck was going at that rate of speed.
Another reason given by counsel for defendant in his brief and argument as to why plaintiff's witnesses are unworthy of belief was that Mrs. Raborn, after the collision, still did not know that her car had been struck in the rear, and that the driver of defendant's truck parked the truck, went over to the depot and told her and it was at that time that Mrs. Raborn got out of the car to see what damage had been done. There is no positive testimony to show that Mrs. Raborn did not know that her automobile had been struck in the rear by the truck, in fact, her testimony is to the contrary, and she was not questioned as to why she did not get out of her automobile immediately after the wreck rather than drive across the railroad tracks to the depot, however, her sister, under cross-examination, testified that she got out of the car at the depot to go and talk to the driver of the truck but that she saw him coming to where they were parked. Her reason as to why they did not stop, according to her testimony, was that the accident had taken place in an intersection on Highway 51, and that in view of the exceedingly heavy traffic on this highway, they felt it best to drive the car off of the highway. This explanation appears to be reasonable as no one was hurt, traffic was heavy, and there is nothing in the record to show that anyone was attempting to flee the scene of the accident, and the distance from the scene of the accident to the depot where they finally parked was very short.
In addition to the above testimony, we also have in the record the positive testimony of the three occupants of plaintiff's car and Tate, who was apparently disinterested, to the effect that the driver of the truck admitted liability and stated that the insurance company would take care of it. This was denied by the driver of the truck.
Taking into consideration all of the testimony, we are of the opinion that plaintiff has established the negligence of the operator of the truck of the defendant company.
As to the quantum, it is necessary that we take the estimate of $431.42, and on this we find a charge for one right front fender of $20.70. The mechanic who changed this fender testified that he did so on account of rust spots. Further, as there was no testimony that there was any damage to the right front portion of plaintiff's car, this item should not have been allowed.
It is, therefore, ordered that the judgment of the District Court be amended by reducing same from $437.59 to $410.72, and as thus amended that it be affirmed, plaintiff to pay the cost of the appeal. *Page 155